IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LESLIE EUGENE MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-03265-CV-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REMANDING THE CASE FOR FURTHER PROCEEDINGS

Plaintiff Leslie Eugene Mills seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff suffered from several severe mental impairments, but he retained the residual functional capacity ("RFC") to perform work as an automobile detailer and a laundry worker.

Because it is unclear whether substantial evidence supports the ALJ's implicit conclusion that Plaintiff did not meet Listing 12.05C, this case is REMANDED for further proceedings.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. Plaintiff filed both applications on February 3, 2012, alleging a disability onset date of March 1, 2004. The Commissioner denied his applications, and he subsequently requested an ALJ hearing. At the hearing, Plaintiff amended his alleged disability onset date to March 28, 2008. The ALJ subsequently affirmed the Commissioner's denial of

benefits. Plaintiff sought review from the Appeals Council, but it denied his request, leaving the ALJ's determination as the Commissioner's final decision. As all administrative remedies have been exhausted, judicial review is now appropriate under 42 U.S.C. § 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be

expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff primarily challenges the ALJ's Step Three determination, arguing that the ALJ failed to consider whether Plaintiff's deficits in intellectual functioning met Listing 12.05C, one of the listings governing mental retardation.[2] Defendant counters that although the ALJ failed to address this issue, the Court should nonetheless affirm because substantial evidence supports the implicit conclusion that Plaintiff does not meet this listing.

To demonstrate disability at Step Three, Plaintiff must show that his impairments meet or equal all the specified criteria in a listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). To meet Listing 12.05C, Plaintiff must show the following: "(1) a valid verbal, performance, or full scale IQ of [60-70]; (2) an additional 'severe' impairment; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (citing *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (holding that to meet 12.05C, the claimant must satisfy the requirements of the introductory paragraph of Listing 12.05 as well as the additional criteria listed in subsection C)).

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2] Effective September 3, 2013, the Social Security Administration substituted "intellectual disability" for "mental retardation" in the listings. Change in Terminology, 78 Fed. Reg. 46499 (Aug. 1, 2013). Because the ALJ rendered his decision before the change in terminology, the parties use the term mental retardation. For the sake of consistency, the Court also uses this term.

3

Plaintiff argues that he satisfied all these requirements. Defendant concedes the first two requirements were met but contends that Plaintiff did not show that he suffered from intellectual and adaptive functioning deficits before age twenty-two.

The Court cannot conclude the third element is unsatisfied because some evidence suggests that Plaintiff's intellectual disability and deficits in adaptive functioning manifested before age twenty-two. Although rendered after age twenty-two, Plaintiff's verbal IQ score of 64 is circumstantial evidence that he had intellectual deficits *prior* to age twenty-two. *See Maresh*, 438 F.3d at 900 (noting that the claimant's IQ score rendered at age thirty-seven was indicative of his IQ score before age twenty-two because IQ is presumed to remain stable overtime) (quoting *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)). Plaintiff, by his own accounts, also struggled in school: he repeated the seventh grade numerous times, he was placed in special education classes, he was transferred to an alternative school, and he eventually dropped out of school after he received numerous "Fs" and realized that he would not graduate. R. at 257, 320, 323. Plaintiff also exhibited problems with social functioning by continually fighting other children. R. at 257, 320, 323. This evidence suggests that Plaintiff *may have* experienced intellectual and adaptive functioning issues before age twenty-two. *See Reed v. Colvin*, 779 F.3d 725, 727 (8th Cir. 2015) (finding childhood onset when the claimant "had attended special education classes and repeated several grades, had problems with math and learning to read, and had quit school when told she had to repeat the eleventh grade."); *Lott*, 772 F.3d at 550-51 (finding childhood onset when claimant was in special education classes, failed to complete high school, and fought with other children); *Maresh*, 438 F.3d at 900 (same).

Defendant, however, contends that this evidence is definitively contradicted by Plaintiff's daily activities, history of working, and lack of mental retardation diagnosis. The Court disagrees. First, Plaintiff's rudimentary daily activities—completing chores, caring for pets,

4

preparing meals, shopping, and working part time for his father as a vacuum disassembler—are not *necessarily* inconsistent with low intellectual functioning. *See Lott*, 772 F.3d at 550-51. Second, although Plaintiff had worked for more than twenty years in various positions, R. at 325, his employment records prior to age twenty-two show that he worked for seventeen different employers in a three-year period. Such a tumultuous work history prior to age twenty-two *arguably* shows deficits in adaptive functioning. Finally, a clinical diagnosis is not a prerequisite to disability under Listing 12.05C. *See Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007). Thus, the Court cannot affirm on the current record.

Although there is some evidence suggesting that Plaintiff met Listing 12.05C, there exists evidence to the contrary. For instance, some examining and reviewing psychologist and psychiatrist variously found that Plaintiff exhibited borderline to low-average functioning. R. at 261, 320, 326. Thus, on remand and after further development of the record, the ALJ may very well find that Plaintiff does not meet Listing 12.05C. But as the current record contains inconsistent evidence on this decisive issue and the ALJ failed to address it, the case must be remanded. *See id.* at 794 (remanding when it was unclear whether Listing 12.05 was met).

## Conclusion

Because the Court cannot find that substantial evidence supports the ALJ's implicit conclusion that Plaintiff failed to meet Listing 12.05C, the Court REMANDS for further proceedings.

**IT IS SO ORDERED.**

Date:  July 13, 2015               /s/ Greg Kays
                                                                            GREG KAYS, CHIEF JUDGE
                                                                            UNITED STATES DISTRICT COURT